## Charles L. Powers v. Abraham L. Rich, Appellant.

184   325
33SC 386

*Attorney at law—Fees—Evidence.*

In an action by an attorney at law to recover compensation for legal services already performed, and compensation for loss sustained by the defendant's refusal to permit him to complete the services which he had been engaged to perform, it appeared that the plaintiff was discharged by defendant before the litigation was completed. Some testimony was admitted to show what his services would have been worth if he had been allowed to complete the contract, but the court, without a motion to strike

this testimony out, directly and emphatically charged that the plaintiff could recover only the value of the services actually performed. The verdict was for one half of what plaintiff claimed. *Held*, (1) that the defendant was not injured by the admission of the testimony, and (2) that, if the jury were too liberal, it was for the court below, not for the Supreme Court, to correct.

Argued Nov. 9, 1897. Appeal, No. 184, Oct. T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1895, No. 84, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover for services as attorney at law. Before EWING, P. J.

Plaintiff in his statement claimed to recover $3,000 for "compensation for legal services already performed on behalf of the defendant, and as compensation for loss sustained by him by reason of the said defendant's unjust refusal to permit him, the plaintiff, to perform and complete the services which the defendant engaged him to perform."

At the trial plaintiff's counsel offered to prove by himself, on the stand, to be followed by other witnesses, what would have been a fair and reasonable amount of compensation due the plaintiff, had he been permitted by the defendant to perform the contract undertaken by him in the prosecution of the claim and litigation referred to on the part of Martha K. Rich against the firm of Black & Baird.

Objected to as incompetent, and that it involves elements of compensation which are not a matter of recovery in this case.

The objection was overruled, and bill sealed for the defendant.

The following and like testimony was admitted :

"Q. Mr. Powers, what would have been a reasonable compensation for the services in commencing, prosecuting and conducting litigation which you have referred to between Martha K. Rich and Black & Baird to the end, had you been permitted to perform your part of the undertaking? A. I regard $3,000 as a moderate compensation, that is, taking into view, or assuming, that the amount recovered was about $25,000, which I had assumed, that is, that the value of the property, the amount of the mortgages unpaid, the amount due on agreements of sale

and cash, if they aggregated $25,000, I deemed $3,000 a moderate compensation, had the labor been performed to completion. Q. Now, Mr. Powers, up until the time that you were discharged from the case by the defendant, what would you say was a fair and reasonable value or compensation of the work and services that you had rendered to the defendant to that time? That, of course, would be the discovery of the facts, investigations made to ascertain them, and the preparation of the bill. A. Well, it is a very difficult question to answer. I would assume that $500 of a retainer would be necessary and just, and then in view of the importance of the litigation and the work performed, consultation, and the drawing of the bill, I would think $500 more. That, however, is not the basis upon which I brought this suit—the responsibility involved.

James S. Young testified : " Q. Supposing the case, Mr. Young, to have been a conveyance to lie in the fact that Mrs. Rich had put into the hands of Black & Baird, as real estate agents, a property of six acres to sell for her ; that they, without her knowledge, or perhaps with her knowledge, took a conveyance to themselves or in the name of their employee ; that subsequently they resold this property at a profit to themselves ; that Mr. Powers had been retained to collect from Black & Baird, or compel an accounting of the profits they had made on the transaction, and had performed the work of investigating the facts from the records of the county, involving an examination of some fifty or sixty deeds made by Mr. Barr, ascertaining the amount of consideration received and collecting all the material necessary to state a case for an accounting against Black & Baird, and supposing he had continued in the litigation until the end, which would have resulted in a decree against Black & Baird for the payment to Mrs. Rich of property, say, worth from $23,000 to $25,000, what would you say, from your knowledge of compensation usually received by attorneys at this bar for such services, would have been a fair compensation to Mr. Powers for his services in that litigation ? A. Do I understand the fee was contingent ? Q. No ; no contingent fee about it. A. I would say from ten to fifteen per cent would be a fair fee, rather a reasonable fee. Q. Ten to fifteen per cent of the amount recovered? A. Yes, sir."

Thomas Patterson, in answer to above expert question, testi-

fied: "A. I should think, put as you put it to me, that $2,000 to $2,500 would be a very fair compensation in view of the recovery."

Colonel Duff, testified: "Q. Now, supposing, Mr. Duff, that Mr. Powers, an attorney of this bar, had been retained by Mr. Rich, an attorney here, to take a litigation of Black & Baird, on behalf of his mother, the ground of which consisted in the fact that his mother had placed in the hands of Black & Baird, some time previously, a lot of ground for sale as agents; that Black & Baird, during the continuation of the agency, had procured a deed for the property from Mrs. Rich to themselves; that subsequent to such conveyance to themselves they reconveyed the property in lots to various people, a large number of purchasers, and made profits on the transaction; that Mr. Powers had been retained to investigate the facts and prepare a bill in equity for the accounting, on the part of Black & Baird, for the profits thus made; that the facts were ascertained, and the litigation commenced, resulting in a decree in favor of the plaintiff in the litigation for the payment by the defendant of property worth, say, from twenty-three to twenty-five thousand dollars; what would you say would be a fair compensation for the plaintiff's attorney in such litigation so resulting? A. From $2,500 to $3,000." [1]

The court charged as follows:

The plaintiff, Charles L. Powers, who is an attorney at law of this bar, brings suit against Abraham L. Rich, to recover compensation for alleged services to him rendered and agreed to be rendered, which were not rendered. It seems that Mr. Powers had made some examination of records and made some inquiries that led him to suspect that Black & Baird had not acted in good faith towards Mrs. Rich, the mother of Abraham L. Rich. She had, through their agency, sold a tract of land of about six acres out in the 21st ward, of this city, and conveyed it to a man by the name of Daniel H. Barr, probably in 1890. Mr. Powers had had some personal litigation with Black & Baird, and he had looked up some records, he says, to see the dealings they had had with other people in the same line, and he says that having told Mr. Ward about it, Ward proposed to introduce him, and that he and Ward started out to find

Mrs. Rich, and they found the present defendant, the son of Mrs. Rich, at a vacant house on Highland avenue, and that then and there he informed Mr. Rich of what he suspected; told him that Barr was simply an employee of Black & Baird, and that he had examined and found a considerable number of conveyances made by him, that he had some lists of them, and that he offered to bring a suit, if he wanted to institute a suit, by taking one half of all he would recover, or to take it without any contingent, for to be paid a reasonable amount for his services. He says the latter agreement was entered into then and there with Mr. Rich, not for the mother who owned the property, but for the son who said he had an interest in it. What interest was not inquired of apparently—and the deeds would not indicate any interest, nor was there anything in the information to indicate that he had any interest. Mr. Ward says substantially that that occurred. And then afterwards Mr. Rich, the present defendant, went to Mr. Powers' office for further information and inquiry of him. Now Mr. Powers says that he was then instructed to prepare a bill; that he had made some further examinations, and that he was employed to go on and prosecute this; and I understood him to say that Mr. Rich was there a second time at his office. Mr. Rich says that there was no agreement to employ him; that there was at the house nothing said about employment, but that he agreed to go to Mr. Powers' office for further inquiries, and he says that at the office the proposition was made by Mr. Powers to take the case for one half of what he would recover, Powers to pay the costs, and that he, Mr. Rich, declined, and that was all that ever occurred. Now, there is a plain question of fact for you at the threshold of this case, as to whether or not the plaintiff is entitled to recover. If Mr. Rich did not engage Mr. Powers for himself to prosecute this suit, make a contract with him to go on and prosecute the suit, prepare the bill and prosecute it, then the plaintiff cannot recover at all, and your verdict should be for the defendant. If he did make a contract to have Mr. Powers take the case and proceed with it, then there ought to be a verdict for the plaintiff for some amount.

Now the reason that I have for saying there can be no recovery unless there was an actual contract made with Mr. Powers to prosecute this suit is this: It has been stated to you that it

is not professional ethics for a lawyer to look up matters and go and hunt up clients and hunt up litigation. That is true. It is an astonishing thing that any lawyer of any standing at the bar should do it. It is a great surprise to me. Not only that, but there is a public policy back of it that forbids it. An attorney at law, a member of the bar, is an officer. He does not stand in the position of an ordinary man in regard to various matters, in regard to his hunting up business, and there is a reason in law, in public policy, on which the rule of professional ethics is founded, namely, that there must be no professional stirrers-up of strife. The old common law forbade it, and a man, whether a professional man or otherwise, who made it his business to hunt up and stir up law suits was a criminal, a barrator, and liable to prosecution, to fine and imprisonment, and it is the law to-day. Now, if a lawyer was to make that his business, to go to work and hunt up cases and hunt up clients to bring suit, why you have got a barrator at once. Public policy would forbid that he be entitled to recover for information that he volunteered when hunting up a law suit. He can only recover for what he did after he is employed or requested for the information. [Now, if he were employed, notwithstanding the unprofessional conduct of going out to hunt up a client to bring a law suit, if with this knowledge Mr. Rich employed him, then he is bound to pay him for what he did afterwards, or for what he is in law entitled to, and you would come to the question of amount.

No full bill was ever prepared. It has been argued to the court and to the jury that he is entitled to all that he might have been entitled to had he performed all the duties of carrying this case through to its legitimate and final conclusion. I do not so understand the law in regard to an attorney in his business. It might be if there was some specific contract for a specific amount, an agreement to do it that it would be good law, but I do not understand that when a man employs a lawyer in a case that he is bound to keep that lawyer all through. They sometimes do quarrel, though lawyers very seldom quarrel with their clients, and he may be discharged. He is entitled to compensation for what he has done, and perhaps pretty full compensation if he is discharged in that way.

Testimony has been given to you by the plaintiff himself,

who is an attorney, and by three professional witnesses, as to the value of services in such a case as this, and they have been based on the hypothesis that there has been a recovery in this case for some twenty-three to twenty-five thousand dollars.  In . the first place, granting all that Mr. Powers says he did in this case, his work in preparing it was a very small part of the work.  This case has been tried before me, the case of Mrs. Rich against Black & Baird, first to determine whether or not they were liable to account at all, and again in regard to the account.  It has been once in the Supreme Court, back before this court, and we have made a decree with the best light we had on it, and it is back in the Supreme Court.  Now, I do not understand it to have been decided in the case in the Supreme Court that Black & Baird were to account for all the excess of price at which they sold the lots over what they paid.  It was not so decided in the court below, and the decree that was taken up and affirmed by the Supreme Court did not decide it.  The case is not finished.  There is an important question, and I think a pretty close question, as to whether or not the amount in the decree may not be cut in two.  I think it should not be, but it is a pretty close question.  And if the plaintiffs were certain of their law in regard to that being the measure of damages, or measure of compensation in this case, they should have waited until there was a final decree, and you cannot in the state of the record, assume that that is the amount that will be recovered ; you come back to a fair compensation.

Now the plaintiff has made an estimate that for this case he ought to have had a retaining fee of $500, which he did not ask for, according to his account, and $500 more for getting the information and preparing this bill, and that it ought to be $3,000, assuming there is a final decree for Mrs. Rich for some $25,000, and that he ought to be paid just as much as though he had done all the work.

Well, I have told you that we do not consider that the measure of compensation in this case.  An attorney at law is not like a carpenter or builder, or many other classes of men.  The man who can command $500 of a retaining fee in a case of this sort is pretty full of business, or else he will soon lose his clients if he charges that.  There is no testimony to the contrary, and the opinion of these gentlemen is entitled to a consideration, but bear in mind it is based on the assumption that he did

all the work, and that there will be the full $23,000 or $25,000 recovered.

Now, I have been over this case pretty fully—I mean the case of Rich v. Black & Baird—and probably have a better idea of the work required in it than any one excepting the attorneys, and it is rather, in some respects, gratifying for me to know that professional fees are so high. But while I am aware that men of exceptional ability, large ability, can charge and get very large fees and keep up their business, there are not many of them, and I have no hesitation in saying that the man who could get the fees estimated by these gentlemen for the work, ought, without any considerable work, taking the run of business, to make $50,000 a year without excessive labor.

First, gentlemen, was there a contract? If there was a contract with Mr. Powers to proceed in this case, he is entitled to some compensation; if there was not, your verdict should be for the defendant. If there was, then you determine, under all the evidence, the compensation that he is entitled to.] [4]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned* among others were (1) rulings on evidence, quoting the bill of exceptions; (4) portions of charge as above, quoting it.

*M. A. Woodward*, for appellant.—Taking the strongest view against us, recovery could be had only for services rendered appellant, in an action upon the alleged contract. Loss for services to be rendered a third person, depending on that person's consent, and never received or performed, though it be because such third person refuses the offer (never tendered her in this case), cannot be recovered from the person engaging them.

The court's charge was calculated to mislead, and cause the jury to find a verdict for plaintiff for a fee for all of the unperformed services for which he brought suit.

*Johns McCleave*, for appellee.—If an agent retain an attorney for his principal, and promise to pay him his fees, he will be personally liable : Ewell's Evans on Principal and Agent, 304 ; Crum v. Boyd, 9 Ind. 289 ; Jones v. Littledale, 6 Ad. & E. 486.

An attorney wrongfully dismissed from the conduct of a suit by his client is entitled to recover as if performance had not

been prevented, and as if he had fully performed the services necessary in the conduct of the litigation: Marsh v. Holbrook, 3 Abb. (N. Y.) 176; Kersey v. Garton, 77 Mo. 645; Baldwin v. Bennet, 4 Cal. 362; Hunt v. Test, 8 Ala. 713; Myers v. Crockett, 14 Texas, 257; Bates v. Desenberg, 47 Mich. 643.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1898:

There is nothing in any of the assignments of error which would justify us in reversing this judgment. The first three are to the admission of evidence of what the value of plaintiff's services would have been had he been allowed to conduct to the end the litigation which he commenced. Whether this evidence was relevant or not depends on the true rule for the measure of damages where an attorney who is employed to conduct a suit is discharged without cause before the end of the litigation. On this point there are very respectable authorities that put him upon the same plane as other agents or employees rendering personal service, and allow him full compensation for what he would have earned had he been permitted to complete his contract. But the learned judge below ruled otherwise, and, though he at first admitted some evidence on that point, yet in the charge he ruled directly and emphatically that plaintiff could only recover the value of the services he actually performed before his discharge. The judge was not asked to strike out this testimony, though it is plain that he would have done so on request, and the contrary rule for this verdict was so clearly and positively given to the jury that they could not have been misled. As it could not therefore have done the appellant any harm, it is unnecessary for us to consider it further.

The remaining assignment is to the charge, practically, as a whole. This left to the jury two questions, first, was there a contract by defendant to pay for plaintiff's services, and secondly, if so, what was the value of the services actually rendered before the termination of the employment. As there was evidence on both points, and the charge indicated very plainly the judge's own view that plaintiff's claim on the basis of what he actually did was excessive, we fail to see what the appellant has to complain of. The jury did not go beyond the evidence, and if they were too liberal in their allowance it was for the court below, rather than for us, to say so.

Judgment affirmed.